# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ORLANDO NELSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 14-CV-0283-CVE-FHM |
| | ) |
| OTIS HUGHS, Jail Administrator OCJ; | ) |
| NATASHA HART, Medical Nurse OCJ; | ) |
| DR. KAPLAN, Medical OCJ; | ) |
| TARA BIG EAGLE, Officer, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This is a 42 U.S.C. § 1983 civil rights action. Plaintiff is a prisoner and appears pro se. Before the Court is plaintiff's amended complaint (Dkt. # 5). In response to plaintiff's amended complaint, defendants Otis Hughs and Tara Big Eagle filed a motion to dismiss, or in the alternative, motion for summary judgment and brief in support (Dkt. # 33). Defendants Hughs and Big Eagle also prepared and filed a Special Report (Dkt. # 32). Defendants Natasha Hart and Dr. Kaplan filed a motion to dismiss (Dkt. # 35). Plaintiff filed a response to defendants' motions (Dkt. # 44). On July 23, 2015, the Court notified the parties that the motion to dismiss filed by defendants Hart and Kaplan (Dkt. # 35) would be treated as a motion for summary judgment. See Dkt. # 45. For the reasons discussed below, defendants' motions for summary judgment shall be granted as to Count I, defendants' motion to dismiss shall be granted as to Count II, and the alternative motions shall be declared moot.

## BACKGROUND

On January 21, 2014, plaintiff was arrested and booked into the Osage County Jail (OCJ) on multiple felony charges.[1] (Dkt. # 32-1 at 4). Plaintiff filed his civil rights complaint (Dkt. # 1) on May 30, 2014. Plaintiff then filed an amended civil rights complaint (Dkt. # 5) on July 8, 2014, adding additional defendants. In the "Nature of Case" section of his amended complaint, plaintiff provides the following statement:

> Plaintiff['s] 8th Amendment [right] was violated. Farmer v. Brennan, 511 U.S. 825, 832, 834 (1994). Policy Rules 9-12 and 22-23 defined Plaintiff['s] contitutional [sic] rights. Inadequate medical care. Suffered two broken hands, notified jail employees, explained what happen[ed], was told to deal with it until I was able to be seen. It took 4 weeks to be seen, by then my hands had started to heal deformed.

(Dkt. # 5 at 2). Based on those facts, plaintiff names four (4) defendants: Otis Hughs, Osage County Jail Administrator; Tara Big Eagle, Officer; Dr. Kaplan, Medical OCJ.; and Natasha Hart, Medical Nurse OCJ. He identifies two (2) causes of action, as follows:

> Count I: Inadequate medical care; my guaranteed safety under my constitutional rights that are protected was denied, failed in my safety medical need. Suffered injuries from an assult [sic] by an Oklahoma Department of Correction[s] inmate, Oine Chambers on Feb. 9, 2014. It took nearly 5 week[s] to be seen by just a Nurse, Ms. Hart, at which time my injuries started to heal, left me bent and broken disfigured physically. A week later Dr. Kaplan ordered x-rays also sending me to see a specialist. Violated my 8th Amendment, Farmer, 511 U.S. at 842 (1994) and 14th Amendment.

---

[1] Plaintiff was later formally charged in Osage County District Court, Case No. CF-2014-0026, with Possession of Firearm After Former Conviction of Felony (Count 1), Driving a Motor Vehicle While Under the Influence of Alcohol (Count 2), Driving While Privilege to Drive is Revoked (Count 3), and Transporting Opened Container of Beer (Count 4), all After Two or More Prior Felony Convictions. See Docket Sheet, On Demand Court Records, www1.odcr.com. On August 15, 2014, plaintiff entered pleas of guilty to Counts 1-4, and was sentenced to ten (10) years imprisonment on Count 1, seven (7) years imprisonment on Count 2, one (1) year imprisonment on Count 3, with the sentences to be served concurrently, and fined $100.00 on Count 4. See id.

Count II: I wasn't protected while in the custody of Osage County Jail. Otis Hughs, failed in maintaining my constitutional rights as far as my safety is concerned and medical need!!! Making Otis Hughs liable. I was left helpless and defenseless! Violated my 8th Amendment having direct link and having knowledge [of] injuries being sufficiently serious. Showing plausible claim of entitlement of relief. Farmer v. Brennan, 511 U.S. 825, 832 (1994). Deliberate indifference to a prisoner's serious medical need.

Id. at 2-3. Plaintiff includes additional facts in support of his claims. Plaintiff alleges, in pertinent part, that,

> On [or] around Feb. 9, 2014 Plaintiff suffered two broken hands, by an assult [sic] of an Oklahoma Department of Correction[s] inmate, Oine Chamber[s], while under the custody of the Osage County Jail, as a pretrial detainee. Plaintiff notified jail employees, one being Otis Hughs, Jail Administrator who holds a constitutional duty to protect and provide medical need to Plaintiff, he failed. Notified Hughs, by grievance which was given to Officer Tara Big Eagle to give to her supervisor Otis Hughs, not once but twice during the months of Feb. 2014 and March 2014. I was told to deal with it till [sic] I was able to be seen by medical. I filled out over ten medical slips. Injuries were serious and obvious and any reasonable prison official would have noticed it, any lay person. It took nearly 5 weeks to be seen by Nurse Hart, who diagnosed injuries serious enough for x-rays (x-rays came back showing two broken hands and bones). By this time hands had started to heal deformed. Nurse Hart request[ed] [that] [I] be seen by Dr. Kaplan, noted that my medical need was serious enough for outside specialist see Farmer, 511 U.S. at 842 (citation omitted). Plaintiff lived in pain for a month without any medical attention. Plaintiff['s] 14th Amendment Due Process was violated. This denial of medical care, caused Plaintiff pain and suffering, unnecessary suffering. Plaintiff [saw] Dr. Pinner [sic], Bone Specialist, on March 27, 2014 and May 9, 2014. During those visits my hands were x-rayed, bones still broken and deformed. Dr. Pinner [sic] told me that the jail administrator and medical waited to[o] late to send me to him. And that my hands had started to heal deformed. And that he had done all he could do without having surgery. Last saying I'll probably have arthrities [sic] and a lot of other complications that will set in. And that it was going to be an up hill battle for me to ever get my mobility back. And that the injuries and complication[s] would be my new norm[al]!!

Id. at 6. As his request for relief, plaintiff "ask[s] for surgery, doctor bills, pain and suffering, pay filing fee $350.00, compensatory and punitive damage[s] . . . $350,000." Id. at 3.

3

As directed by the Court, defendants Hughs and Big Eagle prepared and filed a Special Report (Dkt. # 32). In response to plaintiff's claims, defendants Hughs and Big Eagle also filed a motion to dismiss, or in the alternative, motion for summary judgment and brief in support (Dkt. # 33). In that motion, defendants Hughs and Big Eagle assert that (1) plaintiff's claims should be dismissed, pursuant to Fed. R. Civ. P. 12 (b)(6), for failure to state a claim, (2) plaintiff cannot demonstrate that defendants violated his constitutional rights, (3) they are entitled to qualified immunity in their individual capacities, and (4) plaintiff's claims should be dismissed, pursuant to 42 U.S.C. § 1997e, for failure to exhaust administrative remedies. See id.

Defendants Hart and Kaplan also filed a motion to dismiss (Dkt. # 35). The Court notified the parties that the motion to dismiss would be treated as a motion for summary judgment (Dkt. # 45). In the motion, defendants Hart and Kaplan argue that (1) plaintiff cannot demonstrate they acted with deliberate indifference, and (2) they are entitled to qualified immunity in their individual capacities. See Dkt. # 35.

*ANALYSIS*

**A.     Dismissal standard**

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by

showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009).

For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cty. Bd. Of Cty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991). A pro se plaintiff's complaint must be broadly construed under this standard. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). The generous construction to be given the pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall, 935 F.2d at 1110.

**B.     Summary judgment standard**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996) (quoting Wolf v. Prudential Ins. Co. of America, 50 F.3d 793, 796 (10th Cir. 1995)). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994).

C.    **Count I - Adequacy of medical care**

When, as in this case, "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Johnson v. Roberts, 410 F. App'x 104, 106-07 (10th Cir. 2010) (unpublished)[2]; see also Fed. R. Civ. P. 56(e)(2). In their Special Report (Dkt. # 32), defendants present evidence, including declarations, medical records, jail records, and state court records, contradicting many of plaintiff's allegations. In response to the dispositive motions filed by defendants, plaintiff provides no evidence and continues to rely on mere allegations. (Dkt. # 44). Plaintiff contends that defendants are trying to "look good," and did not "document[ ] any paper work that might show a direct link by policy making the defendant liable of claim." Id. at 3.

---

[2]This unpublished decision is not precedential but is cited as persuasive authority, pursuant to Tenth Circuit Rule 32.1.

After review of the parties' briefs, the Court finds plaintiff has failed to controvert the following facts presented in support of defendants' motions for summary judgment as to plaintiff's claim that he was denied adequate medical care while in custody at the OCJ. On February 26, 2014, plaintiff submitted an "Inmate Health Service Request," stating, "I have two broken bones in my hands. I need my hands looked at badly." (Dkt. # 32-2 at 7). Plaintiff was seen by the nurse at the OCJ, Natasha Hart, on February 27, 2014. Id. at 8; see also Dkt. # 32-9. Nurse Hart noted plaintiff's hands were swollen, and ordered x-rays of both of plaintiff's hands. (Dkt. # 32-2 at 8). X-rays were taken on February 28, 2014, and showed two fractures, one to each of plaintiff's hands. Id. at 11. On March 5, 2014, plaintiff was seen by the OCJ doctor, Robert Kaplan, M.D., on his next regularly scheduled visit to the jail. (Dkt. # 32-8 at 2). Dr. Kaplan examined plaintiff's hands, reviewed the reports, and referred plaintiff to an orthopedic physician, Carl Painter, M.D. Id. Plaintiff was seen by Dr. Painter on March 24, 2014. (Dkt. # 32-2 at 15). Dr. Painter noted plaintiff's hands "reveal[ed] tenderness to palpation," and that there was "no obvious deformity" to either hand. Id. at 16. Dr. Painter confirmed plaintiff's diagnosis of a fracture in both hands, and recommended an "Ace wrap" for comfort, instructed plaintiff to "work on range of motion," and directed plaintiff to return in three (3) to four (4) weeks for "re-evaluation." Id. While this follow-up visit with Dr. Painter was scheduled for April 28, 2014, jail officials were unable to take plaintiff due to staff constraints, and rescheduled plaintiff's appointment for May 9, 2014. See id. at 22. On May 9, 2014, plaintiff was again seen by Dr. Painter. Id. at 23. Plaintiff did not report "any pain or problems. He state[d] he [wa]s able to do the things he want[ed] to do with his hands." Id. Dr. Painter concluded that, as of May 9, 2014, plaintiff "ha[d] no pain and [wa]s able to function normally. In light of his current living situation he has done well." Id.

7

### 1. Exhaustion of administrative remedies

Defendants Hughs and Big Eagle argue that plaintiff failed to exhaust the administrative remedies available at OCJ, and, therefore, the case should be dismissed. (Dkt. # 33 at 30-31). Defendants cite the Prison Litigation Reform Act (PLRA) in support of their argument. 42 U.S.C. § 1997e(a) (providing that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"). This provision applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion of administrative remedies under the PLRA is required for all inmates seeking relief in federal district court regardless of the type of relief available under the institutional administrative procedure. Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Booth v. Churner, 532 U.S. 731, 741 (2001). The "failure to exhaust is an affirmative defense under the PLRA . . . ." Jones v. Bock, 549 U.S. 199, 216 (2007).

The statutory exhaustion requirement is mandatory, and this Court is not authorized to dispense with it. See Beaudry v. Corr. Corp. of America, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003). However, PLRA exhaustion is not jurisdictional. A district court may "dismiss plainly meritless claims without first addressing what may be a much more complex question, namely, whether the prisoner did in fact exhaust available administrative remedies." Woodford, 548 U.S. at 101. When a court evaluates whether an inmate exhausted his administrative remedies, "[s]ection 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies

that might be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them." Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000).

Defendants Hughs and Big Eagle assert that the OCJ has an "Inmate Grievance Procedure," and that plaintiff "never submitted an Inmate Grievance form regarding any of his complaints about his treatment in the Jail . . . during the relevant period of Plaintiff's detention in the Jail." (Dkt. # 33 at 31). In support of this claim, defendants Hughs and Big Eagle provide a copy of the OCJ Inmate Grievance Procedure. (Dkt. # 32-19). They also provide defendant Hughs' Declaration, which states that, "original grievances go to direct line supervisors and if the issue is not resolved, the inmate may appeal the grievance issue to me as Jail Administrator." (Dkt. # 32-18 at 1). Defendant Hughs then states that, "at no time did [he] receive an appeal or other grievance from [plaintiff] complaining of the medical care, the alleged physical attack, or his safety in the Osage County Jail." Id. While plaintiff argues he submitted at least two grievance forms during the relevant time period, see Dkt. # 5 at 6, he provides no evidence supporting this assertion.

"An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002). Plaintiff has failed to controvert the evidence submitted by defendants Hughs and Big Eagle showing that plaintiff did not complete the grievance process at OCJ. Therefore, defendants Hughs and Big Eagle are entitled to summary judgment on the issue of exhaustion.

### 2. No constitutional violation

Even assuming plaintiff could demonstrate that administrative remedies were "unavailable," due to a lack of response to his alleged grievances, all defendants would be entitled to summary

9

judgment on Count I based on application of the governing constitutional standards as to the facts as developed in the summary judgment record.

As his first cause of action, plaintiff claims that he was denied adequate medical care while in custody at the OCJ. See Dkt. # 5. Plaintiff claims that his "injuries were serious and obvious and [that] any reasonable prison official would have noticed it, any lay person." Id. at 6. Plaintiff admits that medical staff at OCJ, and an outside doctor, Dr. Painter, all treated his injuries. See id. However, he claims it took "nearly 5 weeks" to be seen by defendants Hart and Kaplan at the OCJ, and this delay caused his hands to heal "deformed," and resulted in "pain and suffering." See id.

A pretrial detainee's right to receive adequate medical care is protected by the Fourteenth Amendment and the standard for evaluating a claim under the Fourteenth Amendment is the same as the standard under the Eighth Amendment: a plaintiff must demonstrate "deliberate indifference to serious medical needs." Garcia v. Salt Lake Cty., 768 F.2d 303, 307-08 (10th Cir. 1985). "Deliberate indifference" is defined as knowing and disregarding an excessive risk to an inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 847 (1994). In Wilson v. Seiter, 501 U.S. 294 (1991), the Supreme Court explained that the deliberate indifference standard has two components: (1) an objective requirement that the pain or deprivation be sufficiently serious; and (2) a subjective requirement that the offending officials act with a sufficiently culpable state of mind. Id. at 298-99. Negligence does not state a claim under § 1983 for deliberate indifference to medical needs. See Green v. Branson, 108 F.3d 1296, 1303 (10th Cir. 1997). "[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." Oxendine v. Kaplan, 241 F.3d 1272, 1277 n.7 (10th Cir. 2001) (internal citations and quotation marks

omitted). A delay in medical care only constitutes a constitutional violation where the plaintiff can show that the delay resulted in substantial harm. Id. at 1276.

### a. Individual capacity

To the extent plaintiff sues defendants Hughs and Big Eagle in their individual capacity, plaintiff has failed to controvert defendants' evidence demonstrating entitlement to summary judgment. Personal participation is an essential element of a § 1983 claim. Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976); see also Garrett v. Stratman, 254 F.3d 946, 950 n.4 (10th Cir. 2001) (noting that medical official must have "played a role in the challenged conduct" to be liable for an Eighth Amendment violation). As a result, government officials have no vicarious liability in a section 1983 suit for the misconduct of their subordinates because "there is no concept of strict supervisor liability under section 1983." Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996) (quotation omitted). Instead, a supervisor is liable only if he is "personally involved in the constitutional violation and a sufficient causal connection . . . exist[s] between the supervisor and the constitutional violation." Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1151 (10th Cir. 2006) (internal quotation marks omitted) (citing Rios v. City of Del Rio, 444 F.3d 417, 425 (5th Cir. 2006)); see also Schneider v. Grand Junction Police Dep't, 717 F.3d 760, 767 (10th Cir. 2013).

Defendant Hughs is the OCJ Administrator. (Dkt. # 32-6). The uncontroverted facts demonstrate that defendant Hughs did not participate in the medical care provided to plaintiff. Id. Plaintiff cannot hold defendant Hughs liable in his individual capacity based on vicarious liability. As to defendant Big Eagle, nothing in the record suggests that defendant Big Eagle participated in the medical care provided to plaintiff. (Dkt. # 32-7). Therefore, the Court finds that defendants Hughs and Big Eagle, in their individual capacities, are entitled to summary judgment on Count I.

Furthermore, the Court finds that even if the personal participation requirement were satisfied as to defendants Hughs and Big Eagle, the uncontroverted evidence presented by defendants demonstrates that plaintiff received medical care, and plaintiff has failed to show that this treatment was delayed or inadequate.

Defendants Hart and Kaplan are employed by contract to provide medical care at the OCJ. (Dkt. ## 32-8, 32-9). The summary judgment evidence shows that both defendants Hart and Kaplan participated in the medical care provided to plaintiff. Id. However, as discussed below, the summary judgment evidence demonstrates that plaintiff received medical care for his injuries. In addition, plaintiff fails to show that any defendant was deliberately indifferent to his medical needs.

The summary judgment evidence shows that plaintiff submitted a written request for medical care on February 26, 2014. (Dkt. # 32-2 at 7). Plaintiff was seen by the on-site nurse, defendant Hart, the next day, February 27, 2014. Id. at 8. Defendant Hart ordered x-rays of plaintiff's hands, which were taken on February 28, 2014. Id. at 11. The radiology report noted two fractures, one in each of plaintiff's hands. Id. As "treatment of such injuries is limited," plaintiff was provided over-the-counter pain relievers until he could be seen by Dr. Kaplan on his next scheduled visit to the OCJ on March 5, 2014. (Dkt. # 32-8 at 2). On March 5, 2014, Dr. Kaplan evaluated plaintiff's injuries, and recommended a referral to an orthopedic physician, Dr. Painter. Id. Plaintiff was seen by Dr. Painter on March 24, 2014. (Dkt. # 32-2 at 15). Dr. Painter confirmed the fractures and "recommended an Ace wrap for comfort." Id. at 16. Plaintiff returned for a follow-up visit with Dr. Painter on May 9, 2014. Id. at 23. Dr. Painter noted that plaintiff had "no pain, and [w]as able to function normally." Id. at 24. This uncontroverted evidence demonstrates that defendants were not deliberately indifferent to plaintiff's serious medical condition.

Further, with regard to plaintiff's allegation that his access to medical care was delayed, it is well established that a delay in medical care only constitutes a constitutional violation where the plaintiff can show that the delay resulted in substantial harm. Oxendine, 241 F.3d at 1276. In this case, plaintiff received medical care for his fractured hands, and at his follow-up appointment with Dr. Painter, plaintiff stated he "[w]as able to do the things he want[ed] to do with his hand," and he reported no "pain or problems" with his hands. (Dkt. # 32-2 at 23). Significantly, he has not provided any evidentiary support for his claim that the alleged delay in receiving medical treatment resulted in substantial harm. See Oxendine, 241 F.3d at 1276. The Court finds that the summary judgment evidence on file shows that there is no genuine dispute as to any material fact regarding plaintiff's claim that defendants failed to provide adequate medical treatment for his hands. Therefore, defendants are entitled to judgment as a matter of law.

### b. Official capacity

To the extent plaintiff sues defendants Hughs and Big Eagle in their official capacity, plaintiff has again failed to controvert defendants' summary judgment evidence. Claims against a government officer in his official capacity are actually claims against the government entity for which the officer works. Kentucky v. Graham, 473 U.S. 159, 167 (1985). Under § 1983, a municipality may not be held liable on a theory of respondeat superior. Seamons v. Snow, 206 F.3d 1021, 1029 (10th Cir. 2000) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Instead, the plaintiff must show "that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." Seamons, 206 F.3d at 1029. To establish municipal liability, a plaintiff must show: 1) the existence of a municipal

policy or custom and 2) a direct causal link between the policy or custom and the injury alleged. City of Canton v. Harris, 489 U.S. 378, 385 (1989). "A municipality may not be held liable where there was no underlying constitutional violation by any of its officers." Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993).

As discussed above, plaintiff has failed to demonstrate any violation of his constitutional rights by any named defendant. The lack of a constitutional violation by the officers of a municipality precludes a finding of municipal liability. Hinton, 997 F.2d at 782; Myers v. Okla. Cty. Bd. of Cty. Comm'rs, 151 F.3d 1313, 1317 (10th Cir.1998) ("A plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation."). In response to defendants' motion for summary judgment, plaintiff fails to controvert defendants' summary judgment evidence. Therefore, to the extent that plaintiff has sued defendants Hughs and Big Eagle in their official capacity, those defendants are entitled to judgment as a matter of law and their motion for summary judgment shall be granted.

**D.     Count II - Failure to protect**

As his second cause of action, plaintiff claims that he "wasn't protected while in custody of [the] Osage County Jail." (Dkt. # 5 at 2). Specifically, plaintiff asserts that he was assaulted by another inmate, Oine Chambers, while they were both in custody at the OCJ. Id. at 6. Plaintiff alleges that "Defendant Hughs' purported ignorance of any dangerous conditions [at the OCJ] is a direct result of his [ ] attitude toward his responsibility to run the institution." Id. at 7.

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on prison officials to protect inmates from violence at the hands of other prisoners. Farmer, 511

14

U.S. at 833. Pretrial detainees are entitled to the same protection regarding prison conditions under the Due Process Clause as convicted prisoners are afforded under the Eighth Amendment. Frohmader v. Wayne, 958 F.2d 1024, 1028 (10th Cir. 1992). To establish an Eighth Amendment violation based on an official's failure to protect, the inmate must show that (1) the alleged deprivation is objectively "sufficiently serious," meaning the inmate "is incarcerated under conditions posing a substantial risk of serious harm" and (2) the prison official acted with "deliberate indifference," meaning the official knew of and disregarded an excessive risk to the inmate's safety. Farmer, 511 U.S. at 834, 837; Howard v. Waide, 534 F.3d 1227, 1236 (10th Cir. 2008). "In other words, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Riddle v. Mondragon, 83 F.3d 1197, 1204 (10th Cir. 1996) (internal quotation marks omitted) (citing Farmer, 511 U.S. at 837).

In this case, plaintiff's factual allegations as asserted in the amended complaint are inadequate to state a constitutional claim. Plaintiff has failed to provide any evidence or argument demonstrating that defendant Hughs, or any jail official, was aware of facts from which the inference could be drawn that a substantial risk of harm existed. Furthermore, nothing provided by plaintiff suggests that defendant Hughs, or any other jail official, drew the inference that plaintiff was at substantial risk of serious harm. Although plaintiff did "not have to await the consummation of threatened injury to obtain preventative relief," he must "furnish more than a conclusory claim of being afraid." Riddle, 83 F.3d at 1205. The Court finds that the facts alleged by plaintiff fail to rise to the level of a constitutional violation. For that reason, Count II of his amended complaint fails

15

to state a claim upon which relief may be granted, see Fed. R. Civ. P. 12(b)(6), and the alternative motion to dismiss filed by defendants Hughs and Big Eagle is granted as to Count II.

**E.     Qualified immunity**

All defendants argue that, to the extent plaintiff has sued them in their individual capacity, they are entitled to qualified immunity. See Dkt. ## 33, 35. The doctrine of qualified immunity shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law. See Pearson v. Callahan, 555 U.S. 223, 231 (2009). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The qualified immunity inquiry requires analysis of two distinct questions: (1) whether, when taken in the light most favorable to the plaintiff as the party asserting the injury, the plaintiff demonstrates sufficient facts to show the public official's conduct violated plaintiff's constitutional rights; and (2) whether the constitutional right alleged to be violated was clearly established at the time of the alleged violation in a sufficiently analogous factual setting. Saucier v. Katz, 533 U.S. 194, 201 (2001), abrogated in part by Pearson, 555 U.S. 223. While it is often desirable to proceed initially with the first prong, a finding of qualified immunity may be appropriate on either question. See Pearson, 555 U.S. at 236.

"In rebutting a qualified immunity claim at the summary judgment level, a plaintiff can no longer rest on the pleadings and the court looks to the evidence before it (in the light most favorable to the plaintiff)." Axson-Flynn v. Johnson, 356 F.3d 1277, 1299 (10th Cir. 2004) (internal quotation marks omitted) (citing Behrens v. Pelletier, 516 U.S. 299, 309 (1996)). "Once the plaintiff makes this showing, the defendant bears the usual burden of a party moving for summary judgment to show that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter

of law." Id. at 1299-1300. "More specifically, the defendant must show that there are no material factual disputes as to whether his or her actions were objectively reasonable in light of the law and the information he or she possessed at the time." Id. at 1300. "At all times during this analysis, we evaluate the evidence in the light most favorable to the nonmoving party." Id.

As discussed above, plaintiff has failed to show a constitutional violation by defendants. The evidence provided by defendants, when viewed in the light most favorable to plaintiff, demonstrates that no defendant, or OCJ staff member, acted with deliberate indifference regarding plaintiff's medical condition or safety. Therefore, defendants, in their individual capacities, are entitled to qualified immunity.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The motion to dismiss, or in the alternative, motion for summary judgment filed by defendants Hughs and Big Eagle (Dkt. # 33) is granted in part and denied in part, as follows:

    a. As to Count I, the motion for summary judgment is **granted**, and the motion to dismiss is **denied as moot**.

    b. As to Count II, the motion to dismiss is **granted**, and the motion for summary judgment is **denied as moot**.

2. The motion to dismiss filed by defendants Kaplan and Hart (Dkt. # 35) is adjudicated as a motion for summary judgment, and is **granted**.

3. This is a final order terminating this action.

4. A separate judgment in favor of defendants shall be entered in this matter.

**DATED** this 19th day of August, 2015.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

17